UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21062-CIV-ALTONAGA/Goodman

**DOUG LONGHINI**,

    Plaintiff,

v.

**SPEEDWAY LLC**,

    Defendant.

_____

**DEFENDANT SPEEDWAY LLC'S STATEMENT OF MATERIAL FACTS**

Pursuant to Southern District of Florida Local Rule 56.1(a), Defendant Speedway LLC files this statement of material facts in support of its contemporaneously filed Motion for Final Summary Judgment [ECF No. 27].

**Speedway Doral**

1. Speedway owns and operates the namesake gas station and convenience store located at 10675 NW 41st Street, Doral, Florida ("Speedway Doral").

2. Construction of the Speedway Doral facility was completed in 2000. *See* Dec. of Damon Bastin at ¶ 11 (Ex. A – Permit Application Submitted to City of Doral), attached hereto as **Exhibit 1**.

3. Given its location, Speedway Doral is directly accessible to vehicles traveling westbound along NW 41st Street or northbound along NW 107th Avenue.

4. As is typical of many gas stations today, the Speedway Doral facility includes a convenience store. *Id*.

5. As of January 16, 2020, the accessible parking space at Speedway Doral was located parallel with the front entrance of the convenience store (on its southern façade). *Id.* An access path runs adjacent to the west side of the accessible parking space onto the sidewalk leading to the convenience store's front doors. *Id.*

6. Speedway Doral is monitored by an Image Vault DVR digital video surveillance system manufactured by Pro Security Access (the "System"). *See* Magana Dec. at ¶ 3, attached hereto as **Exhibit 2**. The System utilizes multiple cameras located throughout the interior and exterior of the store to monitor the premises twenty-four hours per day. *Id.* Images from these camera are stored on a real-time, continuous basis on a digital hard drive located at Speedway Doral. *Id.* at ¶ 4.

7. The System captured all footage from all operational cameras on January 16, 2020. *Id.* at ¶ 9.

### Plaintiff Douglas Longhini

8. Mr. Longhini is a 47-year old male currently living at 5205 Southwest 141st Avenue, Miami, Florida. *See* Longhini Dep. at 7:20-23; 8:12-14, attached hereto as **Exhibit 3**.

9. He was diagnosed with cerebral palsy when he was two-years old. *Id.* at 42:8-14.

10. Mr. Longhini's condition affects his dexterity, including his ability to stand as well as to grab, grasp, and pinch items. *Id*; *see also* Plaintiff Doug Longhini's Response to Defendant Speedway LLC's First Set of Interrogatories ("Longhini 'Rog

Responses") at p. 11, attached hereto as **Exhibit 4**.

11. Mr. Longhini neither owns a vehicle nor drives, and typically relies on his friends or public transportation services to help him travel around South Florida. *See* Longhini Dep. at 15:19-16:3; 31:7-34:21.

12. Mr. Longhini considers himself an advocate for disability rights as well as a "tester" with respect to ADA compliance at places of public accommodation. *See* Longhini Dep. at 46:4-47:8.

13. In this role, Mr. Longhini is the Plaintiff in over one hundred lawsuits currently pending in the District Courts for the Southern and Middle District of Florida. *Id*. at 51:3-52:5. Over the past two years, he has filed over 190 ADA-related lawsuit in the Southern District of Florida alone. *See* Longhini Lawsuit Chart, attached hereto as **Exhibit 5**.

14. Over the past two years, Mr. Longhini has settled over one hundred lawsuits related to ADA compliance at places of public accommodation. *See* Longhini Dep. at 54:23-55:6. He currently has over 100 lawsuits pending. *Id*. at 51:3-21.

15. The most important thing to Mr. Longhini in all of these lawsuits is that the defendant remediates the architectural barriers complained of. *Id*. at 56:6-12.

### Mr. Longhini Visits Speedway Doral

16. Mr. Longhini visited Speedway Doral on January 16, 2020. *Id*. at 14:9-11.

17. He was accompanied by Pablo Baez, one of his testifying experts in this lawsuit. *Id*. at 14:12-15:1.

4834-7938-5548

18. Mr. Longhini and Mr. Baez met in 2015. *See* Baez Dep. at 36:21-22, attached hereto as **Exhibit 6**. They consider each other to be friends. *Id*. at 38:13-14; Longhini Dep. at 39:15-16.

19. While Mr. Baez does not recall how he met Mr. Longhini, Mr. Longhini recalled that another ADA inspector, Mr. Childers, introduced them. *Id.*

20. Mr. Baez drove Mr. Longhini to Speedway Doral on January 16, 2020. *Id*. at15:19-16:3.

21. Mr. Longhini does not remember the type of car driven by Mr. Baez, but believes it may have been a rental SUV. *Id*. at 15:5-13. (It was. *See* Baez Dep. at 45:13-14.)

22. When questioned as to why Mr. Baez would be driving a rental car, Mr. Longhini claimed not to know. *See* Longhini Dep. at 45:13-15.

23. Mr. Baez was driving a rental car because he actually lives in South Carolina. *See* Baez Dep. at 7:14-15. He has lived there since 1989. *Id*. at 7:7-9.

24. Mr. Longhini and Mr. Baez arrived in the general area of the Speedway Doral at approximately 3:00 pm in the afternoon. *See* Longhini Dep. at 15:2-4.

25. They did not park at Speedway Doral, however. In fact, they parked in a nearby plaza where a *Don Pan* restaurant is located. *See* Baez Dep. at 48: 9-20.

26. Both Mr. Longhini and Mr. Baez traveled from *Don Pan* to Speedway Doral in the vehicular lanes of the shopping plazas, not the designated accessible path of travel. *Id*. at 48:17-49:4.

27. Mr. Longhini and Mr. Baez entered the Speedway Doral at 2:59 pm. *See*

Longhini Dep. at 15:2-4; *see also* Camera 2 (Entrance), conventionally filed as **Exhibit V-2**.

28. Mr. Longhini entered Speedway Doral and traveled to the back of the store. Camera 15 (Snack Aisle), conventionally filed as **Exhibit V-8**. He then traveled toward the facility's cash registers. *See* Camera 11 (SRT), conventionally filed as **Exhibit V-4**. Mr. Longhini exited Speedway Doral at 3:12 pm. *See* Camera 2 (Entrance).

29. During the 13 minutes Mr. Longhini was in Speedway Doral, he neither traveled down the hallway where the restrooms are located nor used the restrooms. *See* Camera 2 (Entrance), Camera 11 (SRT), and Camera 15 (Snack Aisle),.

30. After entering Speedway Doral with Mr. Longhini, Mr. Baez immediately walked to the back of the store where the restrooms are located. *See* Camera 2 (Entrance) Video and Camera 15 (Snack Aisle) Video. He spent several minutes in this area of the store. *Id*. He then walked around the store for several minutes. *See* Camera 14 (Food & Beverage Aisle), conventionally filed as **Exhibit V-7**.

31. Mr. Baez exited Speedway Doral at the same time as Mr. Longhini. *See* Camera 2 (Entrance) Video.

## Mr. Longhini Sues Speedway for Architectural Barriers at Speedway Doral

32. Mr. Longhini filed the instant lawsuit on March 10, 2020. *See* Complaint [ECF No. 1]. In his Complaint, Mr. Longhini alleges that he visited Speedway Doral on January 16, 2020 "and encountered multiple violations of the ADA that directly

affected his ability to use and enjoy the Commercial Property and business located therein." *Id.* at ¶ 16.

33. Mr. Longhini further alleges that the alleged violations he "encountered *during his visit to the Commercial Property*," i.e. Speedway Doral, include:

    a) Mr. Longhini had difficulty exiting his vehicle because the slope of the designated accessible parking space was above permissible limits. *Id* at ¶ 27(A)(i);

    b) Mr. Longhini had difficulty exiting his vehicle because the slope of the designated accessible path of travel next to the accessible parking space was above permissible limits. *Id.* at ¶ 27(A)(ii);

    c) Mr. Longhini could not traverse the interior of Speedway Doral because the continuous path of travel was obstructed by "objects." *Id.* at ¶ 27(B)(i);

    d) Mr. Longhini was unable to transfer from his chair to the toilet because the toilet paper dispenser in the bathroom was mounted less than 2 inches below the grab bar. *Id.* at ¶ 27(C)(i);

    e) Mr. Longhini was unable to use the bathroom mirror because it was mounted too high. *Id.* at ¶ 27(C)(ii).

34. Mr. Longhini reiterated these assertions under oath in his deposition. *See* Longhini Dep. at 19:5-20:18; 25:7-29:6.

35. In reality, Mr. Longhini did not encounter a single one of these barriers during his January 16, 2020 visit to Speedway Doral. *See generally* Conventionally

Filed Video Exhibits [ECF No. 24].

36. The above-described architectural barriers are the only barriers Mr. Longhini was aware of as of January 16, 2020. *See* Longhini Interog. Responses at pp. 2 ("Plaintiff visited the Property on at least one occasion on January 16, 2020, made a purchase and encountered the violations listed in his Complaint."); 3 (same); and 4 (responding to an interrogatory seeking *all* acts or omissions on behalf of Speedway Mr. Longhini contends is a violation of the ADA with "Plaintiff refers Defendant to paragraph 27 of the Complaint.").

37. Mr. Longhini cannot recall going back to Speedway Doral since the filing of his Complaint. *See* Longhini Dep. at 30:3-31:6. Nor can he recall how many times he had been to Speedway Doral prior to filing his Complaint.

38. Speedway received service of Mr. Longhini's lawsuit on March 11, 2020. *See* Affidavit of Executed Summons [ECF No. 4].

**Speedway Remediates the Architectural Barriers Described in Mr. Longhini's Complaint**

39. Upon receiving notice of Mr. Longhini's claims via his Complaint, Speedway immediately began to investigate, and where necessary remediate, the alleged ADA violations described therein. *See* Dec. of Damon Bastin at ¶¶ 4-6. This is consistent with Speedway's standard practice to immediately investigate and, if necessary, remediate any alleged ADA violations brought to its attention. *Id.*

40. On April 3, 2020, Damon Bastin, Regional Maintenance Manager conducted an inspection of Speedway Doral to determine the scope of the remediation measures required at that facility. *Id.* at ¶¶ 6-7.

41. Soon thereafter, Mr. Bastin adjusted the height of the mirror and toilet paper dispenser and requested that the facility's staff clear the floors of items temporarily stored for receiving purposes in order to bring the men's restroom into compliance with the ADA. *Id.* at ¶ 8.

42. After Mr. Bastin's initial inspection, Speedway, with the assistance of Speedway's disclosed expert in this matter Mr. Larry Schneider, determined that it would be more expedient to remediate its parking lot by relocating the accessible parking space from its location on the south side of the convenience store to a new location adjacent to the west side of the convenience store. *Id.* at ¶ 9. Speedway, through its internal engineering team as well as external engineering and construction consultants, prepared the drawings and applications necessary to complete relocation of the accessible parking space. *Id.* at ¶ 10.

43. On September 2, 2020, Speedway—through Great Dane Petroleum—submitted a permit application to the City of Doral seeking approval for this relocation. *Id.* at ¶ 11. Speedway subsequently requested that this permit application be reviewed on an expedited basis. *Id.* at ¶ 12.

44. At present, the permit application remains under review with the City of Doral Building Department. *Id.* at ¶ 13. Once the City of Doral grants final approval to the permit application, Speedway will have the corresponding relocation completed as quickly as possible. *Id.*

45. Once completed, this work will eliminate the alleged architectural barriers concerning the slope of the accessible parking space and accessible path of

travel described in Plaintiff's Complaint. *Id.* at ¶ 16; *see also* Dep. of Charles Childers at 103:10-105:10, attached hereto as **Exhibit 7**; Dec. of Larry M. Schneider at ¶ 8, attached hereto as **Exhibit 8**.

46. On August 25, 2020, Plaintiff served Speedway with a document titled *Rule 34 Inspection Report* prepared by Plaintiff's designated expert Charles Childers. *See* Rule 34 Inspection Report, attached hereto as **Exhibit 9**.

47. In addition to the slope issues related to the accessible parking space and accessible path of travel, the Rule 34 Inspection Report contains five additional architectural barriers that are neither alleged in Plaintiff's Complaint nor in Plaintiff's Initial Expert Disclosure. *Id.*

48. These additional barriers include:

   a) A change in level greater than one-half inch from the sidewalk to the accessible path of travel. *Id.* at p. 4;

   b) Two gaps greater than one-half inch from the public sidewalk to the accessible path of travel. *Id.* at pp. 5-6;

   c) An electrical box protruding more than four inches from the wall on the south façade of the convenience store. *Id.* at p. 9;

   d) A panel-type handle on the entrance doors to the convenience store. *Id.* at p. 10.

49. Speedway has incorporated the alleged barriers described in paragraph 46(a) and (b) above in its parking lot slope remediation plan and has removed the electrical box described in paragraph 46(c). *See* Bastin Dec. at ¶¶ 14-15.

50. As for the alleged barrier described in paragraph 46(d) above, pursuant to recent DOJ Guidance documents, panel-type handles are permissible for places of public accommodation. *See* Schneider Dec. at ¶ 9.

51. Accordingly, all architectural barriers complained of by Mr. Longhini or described by his designated experts have been remediated or are in the process of being remediated. *Id.* at ¶¶ 7-10.

Dated: September 30, 2020.                     Respectfully submitted,

/s/ Eric S. Boos
Daniel B. Rogers
drogers@shb.com
Florida Bar No.: 195634
Eric S. Boos
eboos@shb.com
Florida Bar No.: 0107673
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171

*Counsel for Defendant Speedway LLC*